[Cite as *State v. Keeton*, 2019-Ohio-2039.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-89 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-351 |
| | : | |
| JASON BERNARD KEETON | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of May, 2019.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

JOHN A. FISCHER, Atty. Reg. No. 0068346, 70 Birch Alley, Suite 240, Dayton, Ohio 45440
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Jason Bernard Keeton appeals from his conviction on one count of domestic violence, a fourth-degree felony.

{¶ 2} Keeton advances two assignments of error. First, he contends the State failed to prove each element of domestic violence beyond a reasonable doubt. More specifically, he challenges the legal sufficiency of the State's evidence to prove that the victim was a "family or household member." Second, he claims his conviction was against the manifest weight of the evidence.

{¶ 3} The record reflects that Keeton was charged with domestic violence for hitting his girlfriend in the face during an argument outside of a bowling alley. According to the victim, the argument involved her refusal to give Keeton a set of car keys because she believed he had drunk too much alcohol. At trial, Keeton did not dispute hitting his girlfriend and causing her physical harm. The only disputed issue was whether she qualified as a "family or household member" under the domestic-violence statute, R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." As relevant here, the statute defines "family or household member" to mean "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1)(b). The central issue at trial was whether Keeton's girlfriend was the biological (i.e., "natural" parent of a child of whom Keeton was either the other biological parent or the putative other parent. Based on the evidence presented, the jury found Keeton guilty of domestic violence. It also found he had a prior domestic-violence conviction, making the present offense a fourth-degree felony. The trial court imposed a sentence that included a 17-month prison term. This appeal followed.

{¶ 4} In his first assignment of error, Keeton challenges the legal sufficiency of the State's evidence to prove that the victim was a "family or household member." He contends the State failed to prove that he and the victim had a child together. In support, he cites the victim's trial testimony that he "possibly" was the father of one of her children. He also stresses her testimony that no genetic testing was done to establish parentage, that he is not listed on the child's birth certificate, that no announcements were sent out saying that she and Keeton had a child, and that Keeton never celebrated Father's Day with the child. Keeton also cites the victim's testimony that "[t]here's always been a possibility" someone else is the father and that she was "more hoping" that Keeton was the father.

{¶ 5} Under his first assignment of error, Keeton also contends the trial court should not have allowed a detective to testify that the victim identified Keeton as the father of one of her children. Keeton claims the trial court improperly allowed this testimony, over objection, as an excited utterance after disallowing essentially the same testimony from a different investigating officer the prior day. Finally, Keeton challenges the legal sufficiency of the State's evidence to prove, alternatively, that he was the "putative other natural parent" of the victim's child. While acknowledging that "putative other natural parent" is not defined in the domestic-violence statute, Keeton claims the trial court erred in applying the definition of "putative father" found in R.C. 3107.01(H), which is part of R.C. Chapter 3107 pertaining to adoptions.

{¶ 6} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d

Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 7} With the foregoing standards in mind, we conclude that Keeton's domestic-violence conviction was supported by legally sufficient evidence. The victim testified that she was in "a relationship" with Keeton when she had the child at issue and that she had told him he was the father. (Tr. at 129, 151.) When asked whether she had been in a sexual relationship with anyone else during the relevant time, she did not directly answer. She stated: "We—there was a periods of times where we broke up. And there was . . . ." (*Id.*) The victim did not finish her sentence. She subsequently claimed she was "not sure" Keeton was her child's father. (*Id.* at 151.) However, she admitted telling other family members that Keeton was the father. (*Id.* at 151-152.)

{¶ 8} The victim's mother also testified as a prosecution witness. She testified that Keeton himself had admitted to her that he was the father of one of the victim's children. (*Id.* at 155.) A third witness, Detective Ronnie Terry, testified that he arrived at the bowling alley and overheard the victim speaking to another officer. Terry testified that the victim's speech was "broken up" and she seemed "upset." (Tr. at 186.) Over a hearsay objection, the trial court allowed Terry to testify that he overheard the victim say Keeton was her child's father. (*Id.* at 186-187.) Terry also testified that, in his experience, victims in

domestic-violence cases commonly change their statements after the fact and not infrequently become reluctant witnesses. (*Id.* at 188.)

{¶ 9} In our view, the foregoing evidence was legally sufficient to support a finding that the victim was a "family or household member" because she and Keeton were the biological parents of one of her children. The State presented evidence that the victim had told Keeton and other family members that he was the father. The State also presented evidence that Keeton told the victim's mother that he was the child's father. Finally, the State presented evidence that the victim told a law-enforcement officer Keeton was the father of one of her children. This testimony, if believed, was legally sufficient to support a finding that Keeton in fact was the "natural parent" of one of the victim's children.

{¶ 10} The victim's equivocation at trial perhaps raised a credibility issue for the jury to resolve when assessing the weight of the evidence, but it did not negate the legal sufficiency of the State's evidence. *State v. Sibole*, 2d Dist. Clark No. 2017-CA-68, 2018-Ohio-3203, ¶ 23 (recognizing that witness credibility is not a proper matter for review when assessing legal sufficiency of the evidence). In reaching this conclusion, we are unpersuaded by Keeton's argument that the record would contain legally insufficient evidence if we excluded Detective Terry's purportedly improper hearsay testimony. We reject this argument for at least two reasons. First, when considering a challenge to the legal sufficiency of the evidence, we must consider all of the evidence presented at trial, regardless of whether it was admitted erroneously. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 17-20. Therefore, contrary to Keeton's argument, we are entitled to consider Terry's testimony when evaluating the legal sufficiency of the

evidence.[1] Second, we would find legally sufficient evidence even if we excluded Terry's testimony. Keeton and the victim both told other people that they had a child together. Even without Terry's testimony, this evidence about Keeton and the victim telling people they had a child together was legally sufficient to support a finding that they did. *See Sibole* at ¶ 22-23 (finding legally sufficient evidence to support a domestic-violence conviction where defendant's father testified that the victim and defendant "have a child and further that he knows that [defendant] is the child's father because [defendant] told him so"); *see also State v. Mills*, 2d Dist. Montgomery No. 21146, 2005-Ohio-2128, ¶ 18 (finding the victim's testimony that the defendant was the father of her child, alone, legally sufficient to support his domestic-violence conviction even absent evidence about him signing a birth certificate, establishing paternity, or maintaining a relationship with the child).

**{¶ 11}** Because the record contains legally sufficient evidence to support a finding that Keeton was the biological parent of one of the victim's children, we need not dwell on whether the State alternatively proved that Keeton was the child's "putative other natural parent."[2] We do note that the trial court gave an instruction defining a "family or

---

[1] Notably, Keeton concedes that the record contains legally sufficient evidence to prove he is the parent of one of the victim's children if Detective Terry's testimony is considered. *See* Appellant's reply at 4 ("The jury had before it improper evidence from which it could have concluded that Mr. Keeton was the natural parent of the alleged victim's child.").

[2] Keeton claims the trial court "ruled that the only way to convict [him] was if he was the putative parent of the alleged victim's child." (Appellant's brief at 7.) Upon review, it is unclear to us whether the trial court believed this. When discussing the meaning of "putative father," the trial court stated: "And since the jury must find that beyond a reasonable doubt he is the putative father in this case, *I believe in order for that to go to a jury* without speculation, evidence regarding the definition of putative father must be presented * * *." (Emphasis added) (Tr. at 213.) The trial court appears to have been discussing what was necessary for the putative-father issue to go to the jury, not for the

household member," consistent with R.C. 2919.25(F)(1)(b), as "the natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." The trial court also provided the jury with the statutory definition of a "putative father" found in R.C. 3107.01(H). In its closing argument, however, the State never addressed the "putative father" definition provided by the trial court. Nor did the State argue that Keeton qualified as the putative father of one of the victim's children. Instead, the State maintained that Keeton was the actual father because he and the victim in fact had a child together. (Tr. at 225-226, 231-233.) In any event, Keeton's primary complaint on appeal is with the trial court using the definition of "putative father" found in R.C. 3107.01(H), which is in the chapter of the Revised Code dealing with adoption. Although our analysis above makes it unnecessary to resolve this argument, we too have used the same definition in a domestic-violence case involving the victim's status as a family or household member. *See State v. Hazel*, 2d Dist. Clark No. 2018-CA-39, 2018-Ohio-5274, ¶ 19, fn. 2. Moreover, on appeal Keeton raises a variety of due process and equal-protection challenges to the trial court using the "putative father" definition in R.C. 3107.01(H). He did not raise these arguments below (Tr. at 211-216), and we decline to address them in the first instance on appeal. For the foregoing reasons, we overrule Keeton's first assignment of error.

{¶ 12} In his second assignment of error, Keeton contends his conviction was against the manifest weight of the evidence. In light of the victim's equivocation about

---

case to go to the jury. Regardless, as set forth above, the trial court also instructed the jury that the victim would qualify as a "family or household member" if Keeton was the "natural parent" of one of her children. And in our analysis above, we found legally sufficient evidence to support a finding that Keeton was the parent of one of the victim's children.

whether he was the father of her child, Keeton claims the jury "could not possibly have concluded" that he was the father. To the extent that the jury did reach such a conclusion, he contends it clearly lost its way.

{¶ 13} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 14} With the foregoing standards in mind, we conclude that Keeton's conviction was not against the weight of the evidence. The victim's professed uncertainty at trial about whether Keeton was the father of her child raised a credibility issue for the jury to resolve. As set forth above, the State presented evidence that the victim previously had told Keeton, other family members, and an investigating officer, without any equivocation, that Keeton was the father of her child.[3] At trial, the victim admitted telling people that Keeton was the father but she claimed she was not really sure. The jury could have

---

[3] Keeton's manifest-weight argument does not require us to ignore the testimony from Detective Terry that Keeton believes was inadmissible hearsay. As with a challenge to the legal sufficiency of the evidence, when considering a manifest-weight argument we may consider all of the evidence admitted at trial, regardless of whether it was admitted improperly. *State v. Rich*, 2d Dist. Montgomery No. 27356, 2018-Ohio-1225, ¶ 16, citing *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 20. Once again, however, our conclusion would remain the same even if we excluded Terry's testimony.

concluded, however, that the victim *was* sure and that her prior statements about Keeton being the father were true. In short, the jury reasonably could have rejected as not credible the victim's trial testimony about Keeton possibly not being the father, electing instead to believe her prior statements that he was the father. Although this court may assess credibility in the context of a manifest-weight argument, we still give substantial deference to the factfinder's determinations of credibility. *State v. Stanaford*, 2d Dist. Montgomery No. 27940, 2019-Ohio-1377, ¶ 32. "This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." *Id.* at ¶ 33.

{¶ 15} Here the jury did not clearly lose its way in believing prior statements by both Keeton and the victim that he was the father of the victim's child and apparently rejecting the victim's trial testimony that she was unsure whether Keeton was the father. In its closing argument, the State suggested that the victim was a reluctant witness whose demeanor demonstrated that she "didn't want to be here." (Tr. at 225.) Because we are unable to observe the victim's demeanor, we will defer to the jury on that issue. The implication of the State's argument was that the victim was being untruthful insofar as she expressed doubt about Keeton being the father. On the record before us, we do not find that the jury clearly lost its way in arriving at such a conclusion. This is not an exceptional case in which the evidence weighed heavily against Keeton's conviction. His second assignment of error is overruled.

{¶ 16} The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies sent to:

John M. Lintz
John A. Fischer
Hon. Richard J. O'Neill